Mr. O'Quinn, ready to proceed? Yes, Your Honor. Thank you, Judge Wallach. I may have pleased the court, John O'Quinn, on behalf of WesternGeco. PTAB's decisions validating these three patents should be reversed on the merits, but as a threshold matter, the petition should have been dismissed as time barred under Section 315B. The party still here challenging the validity of these patents is Ion. Let me ask you, in your supplemental brief, you say that you agree there's a split of authority about law or fact. On the ultimate question of privy, yes. Yeah, but you say it's best viewed as a legal determination based on underlying facts. Tell me why, as opposed to a mixed question. Well, Judge Wallach, I think at the end of the day... You know, and I'm saying that informed by looking at Wright & Miller, looking at every statement, and so on. Sure. Well, and just to take a step back, at a minimum, if the wrong test has been applied here, and we submit that it has because the board focused on the issue of control and not on the broader circumstances that we say presents privy, at a bare minimum, that requires a remand. But if you're actually then addressing for yourselves the question of privy, I think that privy is as... You have to have a standard. Sure, and privy is ultimately a legal conclusion. It's the conclusion that parties are sufficiently closely related so that one should be held bound for whatever purposes it is. That's a legal conclusion, and it's based on underlying facts. Yeah, but we're reviewing the facts that lead to that legal conclusion. Absolutely, Judge Wallach. Why doesn't it mix up like that? So I don't know. I mean, at the boundaries, I don't know that there's a fundamental distinction between considering it a mixed question versus being ultimately a legal question that's based on underlying facts because certainly the fact finder will get deference with respect to the underlying facts. Here, of course, the board didn't consider whether or not these facts rise to the level of... I'm going to ask Taylor questions, too. Sure. I've got a related question, which goes to our law on whether a patent qualifies for covered business method review. Okay. We review those determinations under the arbitrary and capricious standard. Okay. Of course, you have to have the right legal standard for what is a covered business method, but then after you've set that standard, then the determination of whether a given patent qualifies for instituting a covered business method patent, we review under the arbitrary and capricious standard. So now I'm wondering should we likewise be applying that standard when assessing whether a given petitioner should be barred because that party is not the real party in interest or that party and the facts of that matter is in privity with a party that had been sued more than one year before the petition had been filed? Sure. What do you think? So, Judge Chin, I think that if you are answering the question of what were the facts that the board found, I think under the APA that ends up being substantial evidence review. I think that if you are ultimately answering the question, the legal question, what I submit is ultimately a legal question of is there in fact, do those facts add up to being privity, then I think that you would review that de novo. I don't see where the arbitrary and capricious standard would actually come in because either you're reviewing fact finding or you're reviewing a legal question. And we're not talking about agency action in the abstract. Was it arbitrary and capricious for them to build the dam here versus building the dam there? So I'm not sure that it makes sense to apply that standard there. I do think, though, that the antecedent point that you noted, of course, is for us the most important point here, which is, of course, what is the standard for privity? And the standard for privity is, as we explain in our brief, consistent with this court's precedence, consistent with the legislative history, and even the trial practice guide, is whether the party's relationship as it relates to the patented technology is sufficiently close to warrant application of what is in this case a statutory estoppel. And the next question, of course, is what does it mean to be sufficiently close? And I think the argument from the other side is we have this Supreme Court Taylor case which is the Supreme Court's last word on non-party preclusion and when to bar a non-party based on a prior litigation with someone else. And Taylor explains why that diffuse standard, such as how close, you know, the non-party was to the party that litigated before, is not a good enough standard. And so we need to channel our thinking in particular ways to understand and establish whether the non-party and the party's relationship is, in fact, sufficiently close. So why, I guess probably this is what Judge Wallach was hinting at, why shouldn't we be applying the Taylor thinking to figuring out the privity question in this case? Sure. Well, first, and I think it's important to recognize, Taylor is not deciding the meaning of privity for all purposes. It doesn't purport to do that. In fact, footnote 8 of Taylor is very clear. They're not even using the term privity precisely because it has come to have so many different meanings. And when you look at the statutory language here, Congress, despite Taylor saying we're not going to use the term privy and privy has a lot of different meanings, Congress used the term privy. Doesn't footnote 8 of Taylor also say that the term privity is, although once upon a time was known, was considered to be a specific legal relationship, it's now been expanded so that by today's standards it's just non-party preclusion in general? Oh, I think that what footnote 8 of Taylor is ultimately saying is that there are a lot of different meanings to the term privity. They're not getting into that. And indeed, if you look at the legislative history here, Senator Kyle specifically talks about how privity has no universal definition. And the tests that were articulated both in the legislative history and in the trial practice guide are very much akin to the tests that we are advocating here, the things that they deride as being inconsistent with Taylor. If you look at 77 Federal Register at 48759, what the trial practice guide says is that we're going to evaluate whether parties are privies in a manner consistent with flexible and equitable considerations. That's a quote. We're going to look at the, quote, relationship between the purported privy and the other relevant party and whether it's sufficiently close. And we're going to consider the, quote, practical situation, which is also channeling the points that Senator Kyle made. So as FAA versus Cooper makes clear, when Congress picks a word out of the common law that has a lot of different meanings, and privity certainly does. Like there's no doubt, for example, ION and PGS were in contractual privy. They're in privy for certain purposes. The question is, are they in privy for the purposes that are relevant here? And when Congress picks a term like privity and it has a common law understanding and the Supreme Court has provided that common law understanding in an opinion, shouldn't we be guided by that Supreme Court opinion? Well, Judge Shinn, what I'm pushing back against is the idea that the Supreme Court was saying anything about the term privy. What the Supreme Court was addressing was whether or not this concept of virtual representation that had grown up in different regional circuits was sufficient for purposes of rejudicata, whether or not parties could actually be bound by a judgment. We're not talking about parties being bound by a judgment here. In fact, 315B doesn't even require that there have been a judgment. It doesn't matter who won or who lost. Let me ask you about the argument that ION makes that you abandon your privity arguments before the PTAB and therefore they're waived. Yeah, they're certainly not waived, Judge Wallach, for multiple reasons. First, they're clearly raised in the institution decision and in challenging institution. And as WIFI-1 makes clear at pages 6, 14, and 17 of the slip opinion, the fact that something is time barred can be reviewed, even if it's only addressing it at institution. And there's no doubt if you look at 1188 to 1190, it's specifically raised. Second, when we raise the issue of privity and use the term privity specifically in seeking rehearing in front of the board in the first round IPRs, if you look at Appendix 364, the board doesn't say that we had waived the issue. The board doesn't say that we had missed the issue. It says, quote, we fully considered evidence of RPI and privity. And in fact, if you look at the discovery motions, or excuse me. I'm sorry, what site was that? That was Appendix 364. 364. And if you also look at Appendix 1303 to 1308, this is where we were seeking rehearing of the denial of discovery post-institution in first round IPRs. So we're specifically seeking leave to file a motion to get discovery related to real party interest and to privity, calling out privity by name. So the idea that this has somehow been waived, I think, doesn't make sense at all. Let me ask you this. And this is a 319, 35 USC 319 question. Since you've appealed all six of the PDEP's final written decisions, may I take it that you're dissatisfied with those? Yes. Thank you. Yes. Yes. I assume that, but. Yes, we are. We're seeking to have all of them reversed or vacated. And the issues here that we're talking about, both in terms of the legal test and in terms of the discovery, that we were denied the opportunity to even file a motion to seek on these facts. And they try to treat these facts as though, well, this is just ordinary run of the course. And they pick at them one by one. But when you look at the totality of the facts here that were laid out before the board, if these facts are not enough to at least have the opportunity to file a motion for discovery, it's really hard to imagine that there will ever be an opportunity to even file a motion to get discovery on these types of issues. Well, there was discovery here in this particular instance. And there were interrogatories that were responded to. There were two rounds of interrogatories, including discovery of the master purchase agreement. So I think it's going a little too far to say that you were not even allowed to file a motion for discovery. I mean, there was discovery here. Let's be clear, Judge Chin. The board did not split the baby here. The board did not order any discovery. The interrogatories that were submitted were voluntarily responded to. This was all still voluntary discovery. And the negotiations that they point to in which they want to say, oh, well, you gave up this or that or the other, that was all before invoking the board and asking the board for leave to file a motion, or before the board teed that question up. The board never granted a motion to – excuse me, never granted us leave to ever file a motion. Okay. So then you're saying that there was a first round of interrogatories and it was just agreed upon by the parties that they would respond to that. Then there was a second round of interrogatories. And then they – the other side agreed to respond to that. And then also at some point hand over the master purchase agreement. So, Judge Chin, a couple of things. First, when we talk about first and second rounds, there were six actually consolidated nine IPRs here. So, yes, there were some interrogatories in the first round IPRs, and there were interrogatories in the second round IPRs. And there were limited answers that were given in which they unilaterally redefined some of the – who some of the parties were. And we went back to the board and said, this is why we need to be allowed to seek discovery.  I realize I'm in a rebuttal, and I want to make – just before I sit down on some of the technical issues here, number one on predicting positions. This is a classic situation where you have definitional language in the patent itself. The patent tells you what is the, quote, most important requirement for the control system. It tells you how to achieve it, and that is because the, quote, predictive model-based control logic. Those are the kinds of unmistakable statements the pacing technologies says are limiting. And what the board did here is exactly what this court said more recently in Henry Smith 871F3rd at 1383, which postdates our briefing, that you can't do. It read a broad construction, but Smith reminds the board that the broadest reasonable construction is the one that corresponds with what and how the inventor describes his invention in the specification. And estimating is not the same as predicting. Then with respect to feather angle mode, let me say that this is the classic case, classic case of hindsight, classic case of never answering the antecedent question of how or why one would think to use intentional feathering, which was known in the art – feathering was known in the art to be a problem. Why would one think it to be a solution? What the board does is it reasons backwards. It says we know that there's a problem, and – Well, as I understand it, the board looked at the other side's expert testimony, and the expert testimony said, number one, you would want to have your streamers in parallel. Number two, you would ideally like to have them at a zero degree. But number three, we know that they oftentimes veer off course, but you still want them to be parallel. Number four, you would want them to be brought back, but sometimes it would create too much noise to have all the birds trying to be brought back in line. So then, therefore, you would want them nevertheless be set at a particular angle so that when you're doing a second pass or a third pass, you would know to have the same angle. So that's my understanding of the expert's testimony that the board ultimately relied on. Did your expert contest any single one of those points that their expert made in building the case? So, yes, and my time, I see, is expiring. Judge Chen, the point I would make is that we – You can answer the question. Thank you, Judge Wallach. When you look at what their expert testified to, what they testified was that there were motivations to solve the problem. There were motivations to want to keep streamers parallel. There were motivations to want to keep them in line behind the boat. There were motivations to want to make sure they don't get tangled. There were motivations to want to be able to account for conditions vis-a-vis current. What the expert doesn't say is, why would you think to do that by feathering when feathering was known to be a problem, not a solution? And that, of course, is exactly, as Cardiac Pacemakers puts it, the recognition of an unsolved problem doesn't render the solution obvious, and that's all that you have here, unless the court has further questions. I'm sorry, I do have another quick question. The PGS litigation is completely settled, is that right? I believe that is correct. That's correct in the lawsuit. Did Western Gecko in that PGS litigation ever assert that PGS was a stop from challenging the validity of the patents in light of the ION litigation outcome? Judge Chin, I don't recall there ever being an assertion by Western Gecko that PGS was a stop. There were assertions by PGS that Western Gecko should have been a stop from asserting various things and arguments that this was essentially claim splitting of claims that were brought against ION. It's Western Gecko, not Western Gecko? Yeah, it's Gecko-Lange as in geographic. Thank you, counsel. Thank you, Judge Wall. We'll restore a couple minutes for you. Thank you, Judge Wall. In fact, we'll give you three, and Mr. Costanzas, we'll give you 18. Thank you, Your Honor, and I hope not to use them all, but I'm here for you to answer whatever questions you have. May it please the court. Okay, let's start with this. Do you disagree with your brethren's discussion of the standard of review? Let me answer that question by saying that I agree with your comment that the question here is a mixed question. The court has asked us for briefing on the legal standards for both real party and interest in Privity, and, of course, we think Privity is out, completely out of the first round IPRs because it was abandoned well before the Section 319 final written decision. Happy to address that, but on the merits, you've asked us for the standards. The standards are those set forth in the trial practice guide. The standards are those that the board has been using since its inception under the trial practice guide, which is real party and interest control. There's some case authority out there, including from this court, and I would think that you would want to refer to that rather than to the trial practice guide. Sure, but the decisions from this court are consistent with what has happened in the trial, what has been set forth in the trial practice guide. With regard to real party and interest, the party has to be able to control. We didn't hear much from my friend about the real party and interest standard. That's all they argued, and that's all the board decided in the 319 final written decision. Talk to me about Taylor. Taylor. And specifically this. Justice Ginsburg says what you say. That's unquestionable. But she says a lot more. She says that exceptions can be grouped into six categories. And certainly one of those categories is discussed at length. Assume control. But none of the others seem to be by the board in any of the decisions. What do we do about that? Well, if I go back to, if you'll excuse me for a second, I'll grab my copy of Taylor so that I can have a slightly more coherent conversation with the court. That's always good. Slightly. I think if you look at a lot of the other categories, they refer to particular types of relationships that aren't really at issue with either real party and interest or privity. So, for example, the first one is a party that agrees to be bound. The second one is of interest. The second one, of course, is fairly broad, which is substantive legal relationships, and that's the one from which footnote 8 is dropped and says this is often referred to as privity, but she also notes at footnote 8 in her opinion for the court that privity has come to be used so broadly that it may be harmful to use the term rather than helpful. But, of course, we have to understand what the term privity means in this statute. And what I think the upshot of Taylor, and I could go through the other various standards, but I think the point is that with regard to privity in the particular circumstances of this statute, it's talking about litigation privity. It's talking about litigation privity because it is precluding litigation before the board. And the trial practice guide's consistent with that, and Taylor's consistent with that. And I think it's telling Judge Wallach that the standard that my friend proposes in their supplemental brief, which is, by the way, a standard that was never, never presented to the board, is a mushy all of the circumstances and facts, which is effectively a know-it-when-we-see-it standard. It's the whole reason why the court rejected the doctrine of virtual representation as it had come to be so expansively applied and said that, really, virtual representation has to be limited to statutory circumstances like a class action where the statute says that a representative may step in on behalf of another if the other requirements of Rule 23 are met. But we're not going to just say, well, gee, Party A was involved in litigation the first time around, and they had sort of the same general motivations, and the other party that we're seeking to preclude was in court, and they knew what was going on, so it's totally fair to hold them liable. No, there are due process limitations, and certainly PGS did not expect that it was going to get precluded from anything by the ION litigation, in which it was not a party. Mr. Castaneda, just a couple of quick questions. Yes. There's a lot in the joint appendix that's marked confidential, like elements of the Master Purchase Agreement, various letters or e-mails between ION and PGS. To what extent can we discuss that, any of that, in open court or in a written opinion? I think, Your Honor, a fair amount of that has been disclosed by the board in public opinions. I'm a latecomer, as the court may know, to this case, so I don't know all of the ins and outs of the protective order as I stand here, but to the extent that we can, if there is to be a written opinion in this case, that we need to work with opposing counsel, we'll be happy to do that. But I think there's a fair amount that can be discussed fairly publicly. Okay. So there is an indemnity clause here, and here's my hypothetical. If there was an indemnity clause that said, we promise that if you're ever sued for patent infringement, we will cover any damages liability you have to deal with from that patent infringement suit. Likewise, we will fund any litigation that you have to endure in defending yourself against that patent infringement suit. Do you think that kind of indemnity agreement would be strong enough for us to draw a conclusion that the party that has been sued, the indemnity, is no longer the real party in interest in an IPR, or at least the indemnitor and indemnity can be considered to be in privity so that if the indemnitor had in fact been sued more than a year before the petition had been filed, then the petition is time barred? So the answer to both of your questions is no. The reason the answer to both of your questions is no is that the indemnity clause that you have just described is a fairly common type of indemnity clause that one would find in lots of different kinds of agreements, and as a commercial agreement between a customer and a manufacturer, a supplier and a customer. For me, just to let you know what I'm thinking, if an indemnity clause was written that way and now I'm the purchaser of this product, don't I feel like it's no skin off my nose if I'm sued and in fact I'm held to be liable for patent infringement because I'm not going to pay for anything and I don't even have to worry about the lawsuit itself because it's the manufacturer that's going to be running the show and handling the whole litigation. I'll be there, but I'll literally be there in name only. But as I understood your hypothetical, you did not have an indemnity agreement that said that the manufacturer will control everything, and that's the upshot of the real party in interest standard, which we say is control. There doesn't seem to be any dispute coming at least this morning from the other side that means control. The trial practice kind of says it means control. Isn't the power of the purse the power to lose? Well, the power may be to lose, but the power is not necessarily to control, and that's what's important in the statute. Now, if you had a different agreement that said, under these circumstances, we'll take over the litigation and the consequences, you will be there in name only, then maybe you have a different case, but that's not the agreements that we have on this record. Why not? Just curious. Well, why not? As my friend pointed out quite correctly, there are different kinds of privity, and that's one of the reasons why Justice Ginsburg in footnote 8 says we're not going to use that term. I think what you mean to say is there's different kinds of indemnity clauses, and I guess in your view not all indemnity clauses are created equal. That's certainly true, but I'm also saying that there are different types of privity, and what you've described to me, Judge Chin, is a case where one might say that there is contractual privity, and if one would say for the substantive law of contracts in that circumstance that there is contractual privity, then all of the consequences in contract law that follow from that. But that's not what the due process clause expects, and again, we're talking about notice and opportunity to be heard as the basics of due process. A party under the circumstances of the indemnity clause that you've just described would not expect that a subsequent suit against it, even if totally indemnified, would somehow or another be a stopping, and the same is true with regard to the application of litigation type estoppel to the Section 315B bar. Let me ask you a few questions. Mr. Quinn indicated, I guess you'll agree, that Western Geco is dissatisfied with all six of the PTAB's final written decisions as required by Section 319. It is. And therefore, Western Geco has the right to appeal from both the first and second round IPRs. It absolutely does have a right to appeal from the final written decisions. But that's an important distinction, Judge Wallach. The appeal under Section 320, I believe it is, comes from the final written decision. And at least with regard to the first round IPRs, those are the ones that are above the line on the caption, the only ones that we appear in here as a joint party. With respect to those IPRs, the Section 319 final written decision that gets appealed to this Court does not contain any holding whatsoever with regard to privity. So you're saying if the Board says something extra in a reconsideration decision, that's blocked from being appealed? I don't think that's in the final written decision. I don't think that's part of the final written decision. And even in the reconsideration decision, the Board could not resurrect that which in this IPR had been abandoned. And I want to make sure that the Court understands the chronology with regard to the abandonment. Ayin wasn't a party to the second round. No. It did not even attempt to join. So that's why the second round are captioned now with PGS's settlement in re Western GCO. But... Ayin doesn't have the right to defend the final written decisions in the second round. Right. Because there's no PTAB decision in its favor. Right. Right. So... And we're here strictly with regard to the first set of above the line... So what prevents us from hearing the appeals from the final written decisions in the first round as in-ray cases? No one party. You could hear them as in-ray cases, and we would sit down and you'd have to decide this without our help. But the fact of the matter is that we are a party, is a joined party to that one. They're trying to overcome it largely not through the merits, but through this procedural bar 315B. They say that that case should not have been filed in the first place. So we're here defending and saying, no, the board was proper to be able to decide those. And our arguments, of course, you'll consider or not with regard to the second round IPRs. But the point, Judge Chen, to go back to the chronology is this. In the preliminary patent donor response, they raised both, no question about it. They said privity and real party and interest. In the patent donor response after institution, which is at Appendix 1240 and 1245, they argue only real party and interest. You will not find privity argued there. PGS then points out in its reply to this that the privity issue has been waived. And that's at page 1450 of the appendix. At the hearing, at 1564 to 1678, which is the entirety of the hearing which is in the appendix, you will not hear Western GECO disagree with that assertion. And then the final written decision at pages 33 to 38 addresses one thing and one thing only, which is real party, not privity. So under decisions like Judge Wallach's decision for the court in Newvasive, they're done. They did not preserve it with regard to the first round IPRs. And the fact that they tried to smuggle it in in the rehearing petition just goes too far. And the waiver issue is one of two reasons, by the way, why this case would be a particularly bad vehicle to engage the legal standard that my friend proposed. Like let's say the district court grants some re-judgment and then the losing party raises something in a motion for reconsideration. And then the district court entertains that additional argument, but then says you still lose. And then that goes up on appeal to us. Would we say, oh, we don't have to worry about what the district court addressed in that recon decision? That wasn't part of the original grant of summary judgment. That's waived. Is that what we would say? You could say that. And of course, waiver is discretionary with the court. If the court absolutely wants to reach this issue, I can't stop it. But the fact of the matter is that this case, this issue was not ventilated adequately in front of the board, and it wasn't the subject of a final written decision. In a district court case, as you've suggested, Judge Chin, I think what you'd have is you'd have review only of the reconsideration decision, which is generally in district court appeals reviewed only for extraordinary abuse of discretion to deny a rehearing, especially when you're trying to bring something in that could have been brought in. No, Judge Chin's hypo was it was granted and then ruled against on the merits. Oh, but I don't think there's a distinction at that point there, because you're still at reconsideration. Because the question to grant reconsideration or not is, I guess what you're saying is it's a granted reconsideration. Basically, I'm going to reconsider it, and then I'm on the merits. If that were the hypothetical here, if that were the case here, then that's fine. But they basically said, look, we've dealt with all of this, and you can't read their discussion, their mention, actually, their bare mention of privity in that decision as referring to anything other than we dealt with this in the institution decision. It doesn't magically put it into the final written decision. So the waiver problems are one reason why this case would be a very bad vehicle to make law for everybody. There are actually two other reasons, one of which is that the standards both. I'm a little confused about this point. Are you saying that if the board definitively resolves a real party and interest or a privity decision in the institution decision, and it's not raised again in the final decision, that we can't review that? If it definitively resolves it in the institution decision and doesn't address it in the final decision. An IPR patentee says, no, the time bar applies here. Because this is, actually, there's a real party and interest that was sued more than a year before. And the board says, we don't find a time bar here. No real party and interest. And then the merits of the IPR just goes on the patentability questions. Are you saying that we can't review that collateral threshold issue? I think that's right. And I think that's consistent, Judge Hughes, with. That seems very odd to me. Because, I mean, wouldn't the same reasoning apply to whether a patent is a CBM patent or not and appropriate for review? If they institute and say it's a CBM patent, but in the actual final determination just say whether it's valid or not, then that would seem, in your view, to be insulated from review. I obviously don't agree with any of these decisions that allow us to make these collateral attacks. But I'm bound by them. And so if we're allowed to review them, I don't see how the board can, in hiding it in an institution decision and refusing to mention it at all in a final decision, could insulate it from review. Well, I guess, Judge Hughes, what, and perhaps the reason that I'm giving the answer that I am that you're reacting to is that we have here far more than just a board failure. We have Western Geco's failure. Western Geco's affirmative abandonment after the institution decision. Well, I get that. That's a different issue. But you seem to rely heavily on the fact that it wasn't in the board's final written decision. And to me, that seems different than just saying they abandoned it. Let me rephrase it because I think I will make the point clearer. There's a reason it's not in the final written decision. The reason it's not in the final decision is that they gave it up. So the board can't be faulted for not having decided it in the final written decision because they gave it up. They were told by PGS that they had waived it. And they never said, no, that's wrong. Let me ask you a follow-up question on that even. Because it still seems to me problematic. If you fight out these threshold decisions in the institution decision, and the board rejects the arguments and said, no, we're going to institute. We don't think there are any threshold bars here. Why would they waste their time re-arguing it? And because they have time limitations. A lot of these cases have multiple claims. They have page limitations. They've lost. Why do they have to re-raise it in order to preserve it for review by us? Well, I think it hadn't been decided definitively at that point because, obviously, they So I think that's an answer on this record. And I think that actually brings me to the other couple of reasons why this would be a bad vehicle to go in that direction. You're over your time. Yeah, let's move on from waiver. Well, on the merits, our privity argument is exactly right. It's consistent with Taylor. It's litigation preclusion. Is it your understanding that all of Taylor is about privity, the entire opinion? No, I would say it's. Do you think that we should adopt every word of Taylor in trying to understand a privity inquiry in the context of a time bar for an IP architecture? Well, to adopt is probably too strong a word. But Taylor makes very clear that the mushy virtual representation standard that my friend is arguing for, in this case, based ostensibly on the law of a sign or a stobble, is not the right rule for non-party preclusion. Taylor says there are six exceptions to some rule against precluding a non-party from having a say in court. And the statute says. And so is it your view that that's really how the PTAB needs to think about whether there's privity between a petitioner and some prior litigant? It's these six factors. I think I can comfortably say that the court could embrace Taylor. But again, remember that the language in the statute is what you're having to interpret and to apply. It's real party and interest. Again, I think we're past that because we're arguing about privity here. And then there's privity, which is a term which Justice Ginsburg tried to avoid. But what we do know. Right, so that's the problem that I'm having with trying to understand how does Taylor fit in this context where we are dealing exclusively about privity. And if it does fit, to what extent does it fit? So here's how Taylor fits. Taylor, consistent with the trial practice guide, consistent with Senator Kyle's comments, says privity is where the relationship between the parties is such that it is fair and it is appropriate to apply collateral estoppel in such a way as though they were actually there at the first trial. There might be some different facts than what we have here that might result in privity in a particular circumstance and not result in privity in another circumstance. But what we have on these facts here is the inquiry is, is it fair and appropriate to bind PGS to ION's inability to bind? Yes, no, I understand all of that. And that's the inquiry. We know about all the generalities. The question is, let's get down into the plumbing now and figure out what parts of Taylor fit in this inquiry and why. I would say that anything that deals with a relationship between the parties that allows for one party to be collaterally estopped by the other, any of those factors. And again, the trial practice guide specifically cites and relies on Taylor. And Judge Chen, to that point, what my friend here is arguing is that not just that they should prevail in this case, but that all of the boards work in this area of real party and interest in privity up to this point has been incorrect. And that it's been resolved by a standard that is consistent with Taylor, that is consistent with the collateral estoppel standard that's set forth in Taylor. One other comment about the reliance on a sign or estoppel. The fact of the matter is that a sign or estoppel may not be long for this world in any event. There's a petition filed by synopsis in the synopsis mentor case that's pending that very well may be granted by the Supreme Court that asks for a sign or estoppel to be narrowed or eliminated. That said, a sign or estoppel doesn't fit comfortably with litigation estoppel. It's a substantive rule of patent law that has to do with the expectations of commercial parties and transactions, not the due process clause limits of enforceability of judgment. Better wrap it up. Let me respond very quickly to the two substantive issues. Just stick to the feather angle one. OK. Quickly. The answer is substantial evidence review, factual findings. You pointed out exactly that the board in this case relied upon the unrebutted evidence coming from Dr. Evans in this case, who said, I find four different ways that a person of ordinary skill would be motivated to modify the prior art to add feather angle. And that's- Even though nobody liked feathering. Well, there's not- where anticipation, teaching away, is not part of the analysis. This is a 103, though. Single reference modification. That's right. I'm sorry. That's right. With regard to 103, sorry. We're moving around so much here very quickly. With regard to the 103 issue, the fact of the matter is that those four are supported by the patent. We didn't have a teaching away argument. We're not faced with a teaching away argument here. And quite frankly, if you look even at the Workman reference, at appendix 505, column three, line 58, to column four, line eight, the streamer control processor is for deciding when and calculating how much the streamer should be repositioned. The fact that the feather angle problem was solved by feathering in the opposite direction was not an inventive leap. And that's what Dr. Evans testified to. There was no contrary evidence. The board made factual findings. Unless the court has further questions at this point, thank you. Three. Thank you, Judge Wallach. On the last point on feather angle, what he said is that there was a motivation to modify the additional prior art to add feather angle mode. The expert never offers evidence on where you get feather angle mode from in the first place. That's the fundamental flaw, and that's why this was wrong as a matter of obviousness. Now, I want to turn back to the issue of waiver because it's gotten so much attention from the other side because they don't want the court to actually grapple with the merits of the standard of privity. And, Judge Hughes, the questions you were asking on that go directly to the point here, which is, number one, they seem to be ignoring the effects of Wi-Fi 1, which I understand Your Honor disagreed with, but they seem to be ignoring the effects of that. And second of all, this is entirely different than Nuvasiv, which they cite. I briefed Nuvasiv, and the argument in Nuvasiv was that they had specifically abandoned the argument by telling the board at oral argument. They were asked the question, are you advancing this substantive issue of patentability? Answer was no. There was nothing like that that happened here, and in fact, quite the opposite. You have us, and you can look again at Appendix 1303 to 1308. It is in the first round IPRs specifically raising issues related to the issue of privity. When you look at the patent owner response... No, well, that is our request for reconsideration of the denial of leave to file a motion for discovery. It is not our request for reconsideration at the end of the case. That's Appendix 364, which also specifically raises the issue of privity. And indeed, while our patent owner response, I admit, doesn't use the term privity, if you look at the arguments we're making at 1242, we're making arguments about the relationship that go to privity. People are using RPI as a shorthand, and they were doing the same thing. If you look at the opening brief, the red brief that they filed in this case, they said, we raised privity and RPI 21 times. They said that the board had correctly decided the issue of privity at red brief 66 to 67. Now in the supplemental brief, they've decided, well, we've waived the issue. There's nothing that's waived here. The court has to reach the issue. Now, when you do reach the issue... And by the way, to the extent that we're talking about, real party and interest, opportunity to control can be enough. You don't actually have to have actual control. And to some of the questions that I think you were asking, Judge Shin, at the end of the day, if it's your wallet that's at stake, there's a pretty good argument that you are the real party in interest here. The court doesn't have to decide that on these facts, because as we've articulated, the facts here, when you look at the relationship, are extensive and show that there is a close, tight relationship in ways related to the patented technology. Now, turning to Taylor. Taylor talks about res judicata. It talks about whether or not you can be bound by a judgment. It does not talk about privity at all, hence footnote 8, much less in all circumstances. And when you look at the legislative history, Congress didn't talk about Taylor. Congress talked about California physicians, a California case that made... Mr. O'Quinn, I'm going to let you run over a little bit, but not as long as I did Mr. Costanza's, because he was responding to questions. If there are questions, I'll let you keep going, too. Thank you. Well, to finish up this point, thank you, Judge Wallach, to finish up this point, California physicians talks about reaching the limits of due process. And let's just keep in mind what we have here. As FAA versus Cooper tells you, you have to look at what is the most analogous. And whatever you think about the doctrine of assign or estoppel, the application of the concept of privity, when it is going to an estoppel, in that context is what is most analogous here. And Intel versus ITC rejects the very kinds of arguments that you hear them making. And you have to remember what the context is. At the end of the day here, Congress could have said, if a patent has been subject to litigation at all, we're not going to allow it to be subject to an IPR. Congress didn't go that far. But Congress didn't limit it to the people it had been asserted against. It struck a middle ground. That middle ground is consistent with this Court's case law in the assign or estoppel context. And I'm happy to answer any questions the Court may have. You're done. Thank you, Judge Wallach. Thank you, Your Honor. As I expected, good arguments from both sides. Thank you. Thank you. All rise.